Thank you. Mr. Nelson, whenever you're ready. Good morning, your honors. And may it please the court. John Nelson on behalf of Appellant Laurie McNaughton. We're here today because words matter. And the district court erred when it determined that the particular words at issue here did not matter and were instead mere puffery. The district court further erred when it determined that plaintiff, excuse me, appellant hadn't met her pleading standard with respect to her warranty claims and hadn't met the heightened 9B pleading standard with respect to her unjust enrichment claims. The district court imposed a more stringent standard than is appropriate here. Because at the pleading stage, a plaintiff need only put forth a plausible claim for relief. And she's done that. But the district court seemed to require that she plead and prove her case in the first instance. But that's not required here. And I think if we start with the puffery claims and we look at, for example, the phrase therapeutic grade, we can see that a reasonable consumer would conclude that these words mean something. That they produce a positive benefit for the body or for the mind. But you're not alleging that the essential oils do not use certain ingredients as advertised, right? No, that's correct, Your Honor. We're not alleging that. What we're alleging is that they misrepresent the effects of the essential oils. But like how do you make it or what sort of reasonable distinction is there between promotes relaxation and promotes feelings of relaxation? Well, I think when we say that we're going to promote a feeling or we're going to promote relaxation, I think that those are analogous here. Because what you're looking at is the end result and that's relaxation, that's stress relief, that's easing the mind, that's relaxing the body. So I don't think that there's a crucial distinction there. Whether we're promoting feelings of relaxation or whether we're promoting relaxation, the end result to the consumer is the same. That if they use these oils as directed, they're going to experience feelings of stress relief. But how are they provable? Like how would one prove that one promotes feelings of relaxation? Well, you can't prove a negative. So we're not saying that. But we're saying that the totality of the information, the evidence that was available to young living could not plausibly allow them to conclude that these oils do the things that they say that they do. Then doesn't that get you into trouble with the puffery argument? That if something can't be proven and it is clearly something that is not provable, then that falls into the second prong of puffery? Well, no, Your Honor. We have scientific studies that have examined the effects of these oils. And they've concluded that there's no way to conclude that these oils have any beneficial effect. So for young living to go ahead and represent that they do in the face of evidence to the contrary, that's deception. That's misrepresentation. And consumers are harmed by it. And I think these are qualitative, specific, objective statements that are being made. If we look at the Avolo factors that the district court relied on when it made its decision, we have three factors here. We have whether the statements are vague, whether they're subjective, and the impact that they have on the consumer. These aren't vague statements. They promise specific benefits. They promise relaxation and tranquility. Again, I'm sorry. It just seems to me that they seem to distance themselves, right? Instead of promoting relaxation, they promoted feelings of relaxation. Instead of describing the products as therapeutic, they described the products as therapeutic grade. I'm not sure if there's a legal significance in terms of the difference between those. But it seems like someone was trying to be careful to distance themselves. And so if you could help us figure out how close the connection has to be for it to be not puffery. Sure. Well, appending the word grade to the word therapeutic doesn't render the word therapeutic meaningless. Just like industrial equipment or industrial grade equipment, excuse me, that's equipment that a reasonable person would conclude is appropriate for an industrial setting and for industrial applications. The same is true of therapeutic grade oils. One would conclude that it's appropriate for a therapeutic setting, for therapeutic applications, that it will produce a therapeutic benefit, and that is a benefit to the body or mind. But it doesn't say this will produce. It says it will promote. But I think that's analogous because to promote is to further. When they say this may produce a certain result, may has meaning. May implies there's a possibility. Can has meaning. Can implies there's a possibility. So if they know that it will not do these things, but they tell consumers that it may do these things, that's a misrepresentation. And I think it's reasonable for a consumer to walk away after being told this may produce result X, that it may produce result X, but it does not. And so I think that that's the distinction. It doesn't may also imply may not. Might not. It might not. It does. But we're not talking about whether it may or may not because we know that it will not. And that's the distinction here. So when they're saying this may produce a certain result, there has to be some reasonable likelihood that it will produce a certain result. I'm sorry. You just said will not. I thought your argument was that it was not proven that these effects would be the result of taking these oils. But now you seem to be saying that it's, in fact, not going to do those things. There is no evidence that it will produce any of these benefits. And so there is no evidence that. No satisfied customers. I'm sorry, Your Honor. No satisfied customers. Well, I don't have any evidence of how satisfied the customers are. But I think if we look to the scientific studies, the scientific studies have all concluded that there's no way to conclude that these produce any of the positive benefits that young living represents that they do. And I think if we look at the NAD and the NARB decisions that are cited in the first amendment complaint and throughout the briefing, they conclude the same thing. And we're not saying that these are dispositive. But what they do say is that a reasonable consumer could walk away with the understanding that these produce a therapeutic benefit to the body and the mind. And the NAD concludes that there's no evidence to support that. The studies cited throughout the fact conclude that there's no evidence to support that. So for young loving young living to make these representations in the absence of evidence, that's a misrepresentation. So I'm not quite sure what to do with the blog posts for the member sales people. It seems a little bit different from, you know, regular advertising claims. Can you point to some authority that's kind of the most relevant in terms of how we treat that type of statement? I'm not certain that I understand the question, but I think what you're asking is, are the blog posts part of the advertising or the marketing campaign? Yeah, my understanding was that they were somewhat indirect as opposed to a typical, you know, what's on the label I understand, you know, 100 percent therapeutic rate, but pure. But this is a little bit different, the stuff that's in the blog. And if you could answer my colleague's question and talk about whether or not 349 and 350 actually cover statements like those that he's mentioned. Sure. So I don't know that there would be any distinction between representations made in the blog, representations made in the website, or representations made on the label, because plaintiff pleads that she viewed not only the label, but also the website. So we have to look at the entire mosaic of representations here, because what we're doing is we're not just looking at how plaintiff perceived these things, but we're also looking at the message that the company intended to send. And the company intended to impart a message here that these oils have a beneficial effect on the body and the mind. So we have to look at the entire mosaic and not just the individual tiles. And if we look at the entire mosaic and we look at how all of these statements are related, we produce oils that work. If you use the oils this way, produce the desired effect. Well, we have to ask ourselves, well, works how? Produces what effect? And we can look to these other statements to see what the company meant. And what they meant is it works by producing these relaxing feelings, by promoting sleep, by promoting energy. So I don't think that we should separate out the blog post, the website, and the label, because it really shed some insight into what the company was intending to convey to the consumer. I do see that my time has expired. So I think if the court has any remaining questions, I can address them in rebuttal. You're reserved a few minutes for rebuttal. Thank you. Mr. Hicks. Thank you, Your Honor. And may it please the court, George Hicks for Appelli Young Living Essential Oils. Three months ago, in International Code Council v. Upcodes, 43, Fed 4th, 46, this court clarified several principles that govern this case. The court explained that there are two forms of puffery. The first encompasses vague, subjective claims about a product that cannot be proven true or false. This form of puffery can be decided as a matter of law on a motion to dismiss. And the court identified several examples of this sort of puffery at page 62, including claims that a product will, quote, work effectively, or that a product is, quote, helpful. By contrast, the court explained, the second form of puffery encompasses objective, provable, quantifiable representations so exaggerated no reasonable buyer would be justified in relying. So which one are you arguing these statements made by your client? These statements fall into the first category. The first category. So are you asking us to define – I'm surprised you said that. Are you asking us to say that there's a per se rule that anytime you mention the word grade or feeling that that becomes puffery that is not provable? No, Your Honor. That is not our argument. I understand the appellant to be arguing that. That is not our argument. Our argument is that the statement at issue here, which is therapeutic grade, is a vague, subjective statement that Young Living put on all of its bottles, regardless of the type of product, as a claim of superiority over competitor products. It's substantially similar to the phrases like work effectively or helpful. But what's the limiting principle? If you're not asking us to go as far as saying anytime somebody slaps the word grade that that automatically puts it in the first category, why is this instance of grade – well, why don't you give me an example of a grade that you would concede? Your Honor, I think if you said – I think the International Code case provides an example. For example, always up to date. So if you had something – No, no, no. But we're talking about the word grade. Sure. I think you are asking us to find that anytime somebody uses the word grade that that puts it in the puffery zone. And if you're not, then explain to me why this instance of grade is. Because what the suffix grade is modifying here is the word therapeutic. And I want to be very clear that what plaintiff argues is the meaning of therapeutic is at page 15 of her opening and page 4 of her reply, quote, having a beneficial effect. But if the phrases work effectively and helpful are first category puffery, which this court said in International Code counsel, I certainly think that having a beneficial effect is. But then when you add the suffix grade, which does have to have some meaning, text matters, context matters. We provided a definition at page 27 of our brief that plaintiff never disputes, which is that the suffix grade means, quote, a degree of comparative quality. So when you put that together with their own definition of therapeutic, this only underscores that the term therapeutic grade is a vague, subjective, unquantifiable form of claim of superiority, which is the first category of puffery. And none of that is altered by the cherry picking of statements on the website for several reasons. First, I think the fact that the plaintiff has to resort to going to the website and looking for scattered statements only underscores that the actual phrase therapeutic grade is itself vague and subjective and unquantifiable. Well, I guess my concern is a little bit broader, I think. It's 100% pure therapeutic grade sounds like it means something. It sounds like it's provable or a fact. And for you to be saying that it's now vague actually seems to make it more slippery. It seems like something that's intended to deceive, to convey some kind of factual representation. And it seems somewhat at odds with the argument you're making now that it just doesn't mean anything. Well, Your Honor, I think first of all, you use the phrase 100% pure. That is not one of the challenge statements here, as was pointed out before. Yes, but it's not. There's never been any challenge to the purity or the ingredients or anything along those lines. As far as the phrase therapeutic grade, I think it is correct to say that it is not the same as saying it's therapeutic or that it will even have specific quantifiable effects. And I think if you go look at even the claimed statements on the website, as Judge Perez pointed out, even those are themselves in the category of puffery about truly has the experience to produce essential oils that work or that a product promotes feelings of relaxation. And if you look at the blog post that they cite, which is at Appendix 52, Young Living's own founder is explaining that there's no standards regarding essential oils. And he himself created Young Living's standards for what constitutes therapeutic grades. So he writes... Instead of promoting feelings of relaxation, it said promotes feelings of energy and aggression suitable for contact sports. Is that also meaningless and would be perfectly fine? Same product. Your Honor, I think, first of all, you'd still have the problems with going to look at website statements in order to sort of reverse engineer a specific meaning into therapeutic grade. I think that might be a little closer question because you're getting certainly more into exact specifics that might be quantifiable. But I don't even think then you'd be getting into that. And again, I would refer back to the International Code case where the court held that an example that would not be, that is non-actionable puffery would be whether a user could glean a, quote, complete understanding of relevant material. And this court said that that is non-actionable puffery because that depends on sort of a subjective understanding or feeling about the end user. And I think that would be similar to the example you're using and similar to the examples that they have cherry-picked from the website, which they don't really ever contend that the plaintiff ever saw. And I think that is another independent problem here in that when you're trying to determine, you know, taking a step back, what a reasonable consumer might be doing, I think the reasonable consumer is looking at the actual label of the product rather than sort of a buried web page that might be directed to salespeople or to a blog post where the founder himself is saying, this is what I feel is therapeutic grade. So if you can. Can I ask, are you taking the position that 349 and 350 of the New York general business law does not cover materials directed to salespersons as opposed to consumers? Or are you doing something a little less than that? I don't think I'm making a categorical per se rule, Your Honor. But I do think that it is in assessing, for example, the plausibility of a complaint under the Iqbal Twombly standard, I think you do have to take into account if you're even going to consider the statements on the marketing page not puffery, which I think they are. They're very much couched in sort of claims of superiority over a competitor product. But I think that if you're going to look at those, you have to take it into account whether it would really be plausible for someone to put all of those pieces together to feel that there is a false statement from the term therapeutic grade. And I want to make one other thing clear. I heard my friend refer several times to this idea, and I think he mentioned several times, that there's no support for these claims or there's no evidence for these claims. I think that just underscores that really what this case is is a lack of substantiation case. It's not really a falsity case. And I think there's a reason for that, which is that this is a follow-on case following the recommendations by the National Advertising Division and the National Advertising Bureau that there was not substantiation to support some of these claims. And, in fact, those same— If I may, I'm interested in whether or not you think anything changes if we think it's under the second example of puffery that was provided in the International Code Council. I don't think it changes because I think that the allegations here do not plausibly allege that a reasonable consumer would actually think that these are statements, if they are, in fact, factual statements, which is what gets you into the second category, factual quantifiable statements. I don't think that the amended complaint is alleging anything that would support the plausible basis that a reasonable consumer would look at these statements and think that they would actually have— Except for his client did, right? Well, his client did not look at most of these statements, and I think that's conceded, Your Honor. The only thing that his client, according to the amended complaint— and they had another chance to amend, but they declined to do that— the only thing in the amended complaint that she alleges that she saw was the label, which just said therapeutic grade, which I almost take it to be conceded that that itself, by appellant, is not enough because that's why they go to the websites. But then there's no allegations that she saw the salesperson website, the founder's blog, et cetera. So your position is therapeutic grade enough wasn't enough to convince a reasonable consumer? No, Your Honor. It's that if you're just looking at the term therapeutic grade, then taking their own definition, which is having a beneficial effect, and then the suffix grade, which is a degree of comparative quality, I think that when you look at the examples this Court provided in International Code Counsel, I think that stacks up quite readily under those examples of work effectively and helpful. And I think that the fact that they have to go beyond that conceitedly to website statements that she conceitedly never saw for the most part, I think there's a couple that she says she did see, but those even aren't attributed to a website. There's no attribution. I think that's at paragraph 63 of the complaint. I think when you put all those together, it just underscores that whether this is a first category, second category case, that the District Court's judgment was correct. Yes. If there are no further questions, thank you. Thank you, Counsel. Mr. Nelson, you're reserved two minutes for rebuttal. Thank you. I do briefly want to address Appellee's argument that Appellant had to cherry pick statements from the website to show that a reasonable consumer would be deceived by those statements. Not only would a reasonable consumer be deceived by those statements had they read and relied upon them, but it also demonstrates that Appellee has a definition for therapeutic grade. Because you can look and you can see that with respect to the peppermint oil, what they say is that between 38 and 47 percent will produce a therapeutic benefit. And they say that when it's harvested during a rainy season, you'll only have 24 percent menthol. And while it will still be pure, it will not be therapeutic. So it's quite clear that Appellee has a definition for therapeutic grade in mind. And then with respect to the lack of substantiation argument, at the end of the day, whether or not Appellee Sorry, just going back to what you just said. Are those materials that the complaint alleges your client saw? The complaint does not allege that the client saw those specific representations, the 38 to 47 percent, but I offer it to show that Appellee was advancing a definition. So this wasn't a claim of superiority, as they say. What they had in mind was a specific benefit. And at the end of the day, what we're here to determine is not some hyper-technical definition of therapeutic grade or what a specialist would conclude when they see that phrase. What we're here to determine is what a reasonable consumer who purchases these products would understand the phrase therapeutic grade to mean. And there's a plausible inference that can be drawn that a reasonable consumer would. So to conclude, as a matter of law, that no reasonable consumer could be misled by this, particularly where the NAD said that they relied on a consumer perception survey in coming to their conclusion, I think is inappropriate. And I thank the panel for their time. And I will yield the floor. Thank you both. We'll take the case under advisement.